The relief described hereinbelow is SO ORDERED.

Signed December 11, 2006.



ROBERT D. BERGER
United States Bankruptcy Judge

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

JOSEPH MARTIN MILLER IV and      Case No. 05-25745
JUDY LEA MILLER,     Chapter 7
      Debtors.

___

**MEMORANDUM OPINION AND ORDER
DECLARING PARTIES' INTEREST IN DEBTORS' TAX REFUND**[1]

This matter is before the Court on Debtors' Motion to Determine Estate's Portion of Tax Refund,[2] Trustee's Response,[3] and supplemental briefs. The Court, having reviewed the relevant pleadings and having considered counsel's argument, finds as follows.

*Findings of Fact*

The parties submitted stipulated facts.[4] Debtors filed for Chapter 7 relief on October 11,

___

[1] Debtors Joseph Martin Miller IV and Judy Lea Miller appear by Christopher R. Coons, Lawrence, Kansas. Trustee Christopher J. Redmond appears in person; Eric J. Howe appears on the briefs filed. However, Mr. Howe has since withdrawn as counsel of record.
[2] Doc. No. 16.
[3] Doc. No. 19
[4] Doc. No. 24, Exhibit A.

06.12.11 Miller Tax Refund Allocation.wpd

2005. Christopher J. Redmond was appointed the Chapter 7 Trustee. The Debtors' Disclosure of Compensation of Attorney reflects Debtors' counsel agreed pre-petition to represent Debtors for a flat fee of $899.00. Prior to the petition date, the Debtors executed an Assignment of Income Tax Refunds (the "Assignment"). The Assignment states, in relevant part:

> For and in consideration of prepetition legal services rendered and to be rendered in connection with a Chapter 7 bankruptcy proceeding, the undersigned hereby assigns and transfers to Christopher R. Coons, Attorney at Law, all interest in and to any claims for refunds of State and Federal income taxes overwithheld or overpaid during the tax years 2005 and 2006 to the extent of $899.00.
>
> The undersigned agrees to deliver to assignee, Christopher R. Coons, any tax refund checks received for the relevant tax years.
>
> Assignee shall retain from such refund checks the amount of his unpaid fees for prepetition legal services rendered in this case, but not exceeding $899. Assignee shall notify the Chapter 7 Trustee of the amount of such refunds and distribute any such refunds in excess of assignee's fee as directed by the Trustee.

The Debtors' 2005 federal income tax return generated a refund of $2,698.00, and their 2005 state income tax return generated a refund of $390.00. Thus, Debtors received an aggregate of $3,085.00 (the "Refund"), which they delivered to their bankruptcy counsel pursuant to the Assignment. The petition date was 284 days into the year (77.81% of the year was pre-petition). According to the parties, the pro rata portion of the Refund attributed to pre-petition is $2,400.38 and the post-petition portion is $684.62.[5]

*Analysis*

This contested matter is a core proceeding over which the Court has jurisdiction.[6]

---

[5] The parties stipulated to an aggregate refund of $3,085.00, but $2,698 (federal) plus $390 (state) equals $3,088.00. Whether a typographical or mathematical error, 77.81% of the aggregate refund is actually $2,402.77 and the remainder is $685.23.

[6] 28 U.S.C. §§ 157 and 1334.

06.12.11 Miller Tax Refund Allocation.wpd

The issue as presented by the parties is whether the Assignment should be paid from the pre- or post-petition portion of the Refund. The parties agree the fee is reasonable and should be paid in full. Further, the parties have no argument concerning the validity of the Assignment. Rather, Debtors' counsel seeks payment solely from the pre-petition portion of the Refund, while the Trustee asserts the fee should be paid first from the post-petition portion of the Refund with only the resulting deficiency of $214.38 being paid from the pre-petition portion. In short, Debtors' counsel contends the Trustee should receive $1,501.38 ($2,400.38 pre-petition refund less $899.00 attorney's fees), while the Trustee argues he is entitled to $2,186.00 ($2,400.38 pre-petition refund less $214.38 deficiency after fees are paid from post-petition refund). Debtors would receive $684.62 if they prevail and nothing if the Trustee prevails. The Debtors argue that because the fee agreement was entered into pre-petition, it is a pre-petition debt and should be deducted entirely from the pre-petition portion of the Refund. The Trustee argues the Court should apply the equitable doctrine of marshaling and require the fee be paid first from the Debtors' post-petition portion of the Refund before being paid from the estate's portion.

Court-ordered marshaling requires (1) the existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his claim from either of the two funds, while the other creditor has access to only one fund.[7] Generally, marshaling prevents a senior lienholder from arbitrarily exhausting the only collateral of a junior lienholder when the senior creditor has other collateral while the junior creditor does not.[8]

---

[7] *Morris v. Steele (In re Steele)*, Adv. No. 04-5265 (Bankr. D. Kan. filed Nov. 17, 2005) (J. Nugent) *available at* http://www.ksb.uscourts.gov/opinions/default.htm (citing *Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 160 (Bankr. D. Kan. 1988)).

[8] *Meyer v. U.S.*, 375 U.S. 233, 237 (1963).

In this case, the Trustee argues all three elements are met. First, the Trustee identifies Debtors' counsel and the pre-petition creditors as the two creditors in common with the Debtors. Second, the Trustee defines the two funds as the pre- and post-petition portions of the Refund. Lastly, the Trustee assumes the Assignment makes both the Debtors' pre- and post-petition Refund available to Debtors' counsel, while other pre-petition creditors have recourse only to the pre-petition Refund.

The parties ignore the Assignment's effect on the extent to which the Refund became property of the estate. Assignments of tax refunds for payment of Chapter 7 debtors' counsel is common practice. When the assignment is made to pay a flat fee retainer, the money does not become property of the estate. The Supreme Court noted that payment for Chapter 7 debtors' counsel is protected by counsel's ability to accept a retainer to cover their standard fee and the cost of filing the petition.[9] In fact, after *Lamie*, a retainer is one of the few avenues by which Chapter 7 debtors' counsel may be paid without delineating between pre- and post-petition services. The *Lamie* retainer exception, as it has become known, allows a debtor to pay Chapter 7 counsel a reasonable fee in advance of filing.[10] The *Lamie* retainer exception applies to flat fee retainers because such retainers become the attorney's property when paid.[11]

Under Kansas law, the assignment of a contingency such as a tax refund is an absolute transfer. This method of payment is akin to a cash retainer. The Bankruptcy Code states the

---

[9] *Lamie v. United States Trustee*, 540 U.S. 526, 537-38 (2004).
[10] *Id.*
[11] *In re Wagers*, --- B.R.---, 2006 WL 3411857, at *5 (10th Cir. B.A.P. 2006) (citing *In re CK Liquidation Corp.*, 343 B.R. 376, 383 (D. Mass. 2006)).

estate is comprised of all the debtor's legal and equitable interests in property *as of the commencement of the case*.[12] Generally, in the absence of an assignment, a debtor's tax refund attributable to pre-petition withholding is property of the estate.[13] However, the estate may take no greater interest in property than that held by the debtor as of the petition date.[14] The existence and scope of the debtor's interest is determined by state law.[15] Under Kansas law, "an assignment passes all the assignor's title or interest to the assignee, and divests the assignor of all right of control over the subject matter of the assignment."[16] Any right or interest in property, whether vested or contingent, may be assigned, sold, or bartered.[17] Once property or the expectancy to receive property is assigned by valid assignment, the assignee's claim is prior and paramount to the assignor and anyone claiming on the assignor's behalf.[18] Specifically, a tax refund assignment for the payment of a flat fee retainer is an absolute and unconditional transfer because the fee immediately becomes the attorney's property.[19] The assignor retains no legal or equitable interest in assigned funds.[20] Thus, the debtor, and therefore the estate, can take no greater interest in the refund than the debtor's interest in any unused portion of the refund as of the petition date.

Since there is no question that the entire $899 retainer shall be paid from the Refund, the

---

[12] 11 U.S.C. §541(a)(1) (emphasis added); *In re Rash*, 22 B.R. 323, 324 (Bankr. D. Kan. 1982).
[13] *Segal v. Rochelle*, 382 U.S. 375, 384 (1966).
[14] 11 U.S.C. §541; *In re Martin,* 167 B.R. 609, 617 (Bankr. D. Or. 1994).
[15] *Butner v. United States*, 440 U.S. 48, 55 (1979).
[16] *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 861, 528 P.2d 1198, 1203 (1974).
[17] *Chatterton v. Clayton,* 150 Kan. 525, 95 P.2d 340, 341-42 (1939) (expectancy of inheritance is properly assignable, and assignor acquires no interest when the inheritance is later distributed).
[18] *Id.* (prior assignment defeats a garnishment).
[19] *In re Wagers,* --- B.R.---, 2006 WL 3411857, at *5 (citing *In re CK Liquidation Corp.*, 343 B.R. at 383); *In re Lagerstrom,* 300 F. Supp. 538, 541 (S.D. Ill. 1969).
[20] *Chatterton v. Clayton,* 150 Kan. 525, 95 P.2d at 342.

issue is whether the Court shall prorate the entire Refund before deducting the retainer or deduct the retainer prior to dividing the Refund into its pre- and post-petition components. In *Steele*, the Court faced a similar question; however, *Steele* had very different facts. *Steele* involved the government's post-petition setoff of a nondischargeable child support obligation. *Steele* did not involve a pre-petition transfer by assignment. Thus, as of the petition date, the debtor, and therefore the estate, had an expectancy in the entire refund. After the government made the setoff post-petition, the debtor argued the Court should prorate the net refund after setoff rather than the gross refund prior to setoff. *Steele* found the debtor benefitted from the setoff because it satisfied a debt which could have been collected from him post-discharge. Thus, the Court refused to give the debtor another benefit by prorating only the net proceeds of the refund.[21] The Court applied the proration to the entire refund as it would have existed as of the petition date.

In this case, prorating the entire Refund provides a false starting point. The parties divide the entire $3,085.00 Refund into $2,400.38 pre-petition and $684.62 post-petition. However, because of the Assignment, $3,085.00 was not available for the parties to divide. The Debtors parted pre-petition with their entire ownership, title, and interest in the Refund to the extent of $899. Thus, on the petition date, neither the Debtors nor the estate had any expectancy to receive those funds. One fund, the entire Refund, transferred to Debtors' counsel pre-petition. Until the Refund was reduced by the amount of the Assignment, the Debtors and therefore the estate had no claim to *any portion* of the Refund. The entire Refund could not create the two funds upon which the Trustee relies to apply the doctrine of marshaling. Neither pre- nor post-petition funds existed from which to marshal payment. The ownership and right to the entire

---

[21] *Steele, supra,* available at http://www.ksb.uscourts.gov/opinions/default.htm.

Refund belonged to Debtors' counsel until his $899 fee was deducted in full. The Debtors, and therefore the estate, held only a reversionary interest in whatever amount of the Refund exceeded $899. As it turns out, Debtors held an interest in $2,186.00 of the Refund as of the petition date. The parties seem determined to place the cart before the horse. The parties allocate the Refund between pre- and post-petition prior to the deduction of the attorney's fee. However, the Assignment removed the entire Refund from the reach of both the Debtors and the estate. Accordingly, the Court shall prorate the Refund based upon its value as of the petition date (less counsel's $899 fee). The calculation as to the balance of the Refund is that 77.81% of $2,186.00 (which is $1,700.93) shall be paid to the estate. The Debtors shall be paid the remainder.

### *Conclusion*

IT IS HEREBY ORDERED that Debtors' counsel shall receive $899.00;

IT IS FURTHER ORDERED that the Estate shall receive $1,700.93;

IT IS FURTHER ORDERED that the Debtors shall receive $485.07.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

06.12.11 Miller Tax Refund Allocation.wpd